■ JEFF BUCK, Doing Business as BAY AREA PROPERTIES, Appellant, v ROBERT J. CIMINO et al., Respondents. [663 NYS2d

635] —Motion by the appellant for reargument of an appeal from a judgment of the Supreme Court, Queens County, dated March 23, 1995, which was determined by decision and order of this Court dated June 16, 1997, separate motion by the respondent Caroline Van Ess for leave to appeal to the Court of Appeals from the decision and order of this Court, and cross motion by the appellant to direct the respondent Caroline Van Ess to post an undertaking in the sum of $49,000.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

Ordered that the motion of the respondent Caroline Van Ess for leave to appeal to the Court of Appeals is denied; and it is further,

Ordered that the cross motion by the appellant to direct the respondent Caroline Van Ess to post an undertaking is denied as academic; and it is further,

Ordered that the motion for reargument is granted and, upon reargument, it is

Ordered that the unpublished decision and order of this Court dated June 16, 1997, is recalled and vacated and the following decision and order is substituted therefor:

In an action, *inter alia,* to recover a broker's commission, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Dye, J.), dated March 23, 1995, which, after a nonjury trial, dismissed the complaint.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting the provision thereof which dismissed the complaint in its entirety and substituting therefor a provision awarding the plaintiff judgment against the defendants Robert J. Cimino and Angela M. Cimino in the principal sum of $49,000 on the first cause of action for recovery of a broker's commission with interest thereon from January 29, 1987, and (2) adding a provision thereto awarding judgment to the defendants Robert J. Cimino and Angela M. Cimino against the defendant Caroline Van Ess in the principal sum of $49,000 on their cross claim for indemnification with interest thereon from January 29, 1987; as so modified, the judgment is affirmed, with costs to the plaintiff payable by the defendant Caroline Van Ess, and the matter is remitted to the Supreme Court, Queens County, for the calculation of interest on the amounts awarded and entry of an appropriate amended judgment.

The plaintiff, a licensed real estate broker, commenced this action, *inter alia,* to recover a broker's commission arising from

the sale of a home in Suffolk County pursuant to an oral agreement with the defendant-sellers, Robert J. Cimino and Angela M. Cimino. The plaintiff asserted that he was the procuring cause of the sale to Caroline Van Ess. Following a nonjury trial, the Supreme Court, Queens County, found, *inter alia,* that the plaintiff had a valid, oral broker's agreement with the Ciminos for a 7% commission. However, even crediting the evidence presented by the plaintiff, the court held that he had failed to establish a prima facie case that he was the "procuring cause of the sale". Accordingly, the court dismissed the complaint. We now modify.

Exercising this Court's plenary powers of review upon an appeal from a judgment entered after a nonjury trial (*see, U.S. No. 1 Laffey Real Estate v Hanna,* 215 AD2d 552; *Tri-State Sol-Aire Corp. v United States Fid. & Guar. Co.,* 198 AD2d 494), we agree with the Supreme Court that the evidence presented by the plaintiff, to the extent set forth herein, is to be credited. Further, we find this to be the case even to the extent that such evidence conflicted with that proffered by the defendants. Thus, the relevant facts may be summarized as follows: On January 16, 1987, Caroline Van Ess (a licensed real estate broker) came to the plaintiff's real estate office, Bay Area Properties, and met with Richard Stafford, a sales agent. Van Ess told Stafford that she was looking for a new home in Bellport. After reviewing the listings, Stafford and Van Ess selected four or five properties to view, one of which was the Cimino property. After viewing the Cimino home from the outside, Van Ess appeared interested and expressed a desire to view the interior. Stafford telephoned Mrs. Cimino, told her that he had a potential purchaser for her home, and asked if he could gain access to the interior. He also inquired about the current asking price for the home, which Mrs. Cimino stated was $750,000. Stafford did not identify Van Ess by name. Although Mrs. Cimino and Stafford made arrangements to allow Van Ess entry to the home, the arrangements did not work out. Accordingly, when Stafford and Van Ess returned to the Cimino home later that afternoon, they were only able to view the home through the back windows and look over the grounds and pool. At the time, they also discussed the number of rooms, property taxes, lot acreage, and the selling price. Van Ess noted that the home might be too small for her needs, but that she would be in contact with Stafford. Approximately one week later, Van Ess called Stafford and said that she was not interested in any of the properties that she had been shown. However, in February 1987 the plaintiff learned that, by contract dated January 29, 1987, Van Ess had agreed to

purchase the Cimino home for $700,000. Next to the printed provision of the contract reciting that no broker had been involved in the sale, there was a handwritten interlineation by which Van Ess agreed to indemnify the Ciminos and hold them harmless for any claim for a broker's commission. The plaintiff demanded but was denied a commission on the sale of the home. Neither Stafford nor the plaintiff participated in any negotiations between Van Ess and the Ciminos concerning the sale of the property.

It is well settled that in order to state a direct claim for a commission, a broker must prove (1) that he or she is duly licensed, (2) that he or she had a contract, express or implied, with the party to be charged with paying the commission, and (3) that he or she was the "procuring cause" of the sale (*Greene v Hellman,* 51 NY2d 197, 206; *see, Sibbald v Bethlehem Iron Co.,* 83 NY 378). Here, it is not disputed that the plaintiff was a duly licensed broker. Further, we agree with the Supreme Court that a valid brokerage agreement for a 7% commission was in effect at the time of the sale (*see, Sibbald v Bethlehem Iron Co., supra;* 2 Warren's Weed, New York Real Property, Brokers, § 3.03 [4th ed 1998]; 11 NY Jur 2d, Brokers, § 21; General Obligations Law § 5-701). However, we disagree that the plaintiff failed to establish a prima facie case of entitlement to a broker's commission.

Although it is not disputed that the plaintiff was not involved in any of the negotiations that led to the sale, a broker, in order to qualify for a commission, need not necessarily have been involved in the ensuing negotiations or in the completion of the sale (*see, Greene v Hellman, supra,* at 205-206). However, "[i]f the broker does [not] participate in the negotiations, he must at least show that he created an amicable atmosphere in which negotiations proceeded or that he generated a chain of circumstances that proximately led to the sale" (2 Warren's Weed, New York Real Property, Brokers, § 6.01 [4] [a] [4th ed 1998]; *see, Busher Co. v Galbreath-Ruffin Realty Co.,* 15 NY2d 992; *Hagedorn v Elwyn,* 229 AD2d 654; *Sholom & Zuckerbrot Realty Corp. v Citibank,* 205 AD2d 336; *Briggs v Rector,* 88 AD2d 778; *Salzano v Pellillo,* 4 AD2d 789). Here, in light of, among other things, the actions undertaken by the plaintiff and his agents to interest Van Ess in and to inform her about the Cimino property, the speed at which the contract of sale was subsequently executed (approximately ten days after the initial meeting between Van Ess and the Ciminos), and the testimony suggesting that the negotiations between Van Ess and the Ciminos were minimal at best, we find that the plaintiff may

be credited with setting in motion the chain of circumstances that proximately led to the sale. Impacting upon this determination is our conclusion that the plaintiff's lack of involvement in the ensuing negotiations and sale is attributable to Van Ess, who apparently called upon her knowledge as a broker in affirmatively misleading the plaintiff into believing that she lacked any interest in the Cimino property while clearly the contrary was true (*see, Busher Co. v Galbreath-Ruffin Realty Co., supra; cf., Smith & De Groat v Vita,* 178 AD2d 591; *Bryce v Wilde,* 39 AD2d 291, *affd* 31 NY2d 882; *Pilger v Ramati,* 37 AD2d 581; *Cohen v City Bank Farmers Trust Co.,* 276 App Div 195; 29 ALR3d 1229, § 4 [a]). Accordingly, the plaintiff is entitled to judgment against the Ciminos on his claim for a broker's commission in the sum of $49,000 (7% of the purchase price of $700,000). Further, pursuant to the indemnity provision in the contract of sale between the Ciminos and Van Ess, the Ciminos are entitled to be indemnified by Van Ess for this sum. In determining damages, we find that Van Ess failed to proffer sufficient evidence to support her claim that a portion of the purchase price of the property was for furnishings obtained in the sale. Miller, J. P., Ritter and Altman, JJ., concur.

Santucci, J., dissents and votes to affirm the judgment appealed from with the following memorandum. I dissent and vote to affirm the judgment of the Supreme Court dismissing the complaint.

The facts of this case, which are set forth by the majority, do not support the conclusion that the broker was the "procuring cause" of the sale and thus, case law dictates that he not recover a commission. As noted by the majority, one of the criteria necessary to state a direct claim for a commission, and the only element in dispute in this case, is proof that the broker was "the procuring cause" of the sale. In order for this criterion to be established, the facts and circumstances must demonstrate "a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation" (*Greene v Hellman,* 51 NY2d 197, 206). In *Greene* the Court of Appeals held that the broker was not the procuring cause of the sale since "the most that can be said for [the broker's] efforts is that he alerted [the buyer] to the availability of the property" (*Greene v Hellman, supra,* at 206).

Similarly, in the case at bar, the broker did little more than show only the outside of the house to the buyer two times in the same day. He did not participate in any of the negotiations, did not arrange a meeting of the parties, did not reveal the

buyer's name to the seller, and did not even meet or communicate with the seller from the time he last showed the property to the buyer until after the contract of sale had been executed. Under these circumstances, it can hardly be said that the broker brought together the "minds of the buyer and seller" (*Sibbald v Bethlehem Iron Co.*, 83 NY 378, 382), or that he "generated a chain of circumstances that proximately led to the [sale]" (*Busher Co. v Galbreath-Ruffin Realty Co.*, 15 NY2d 992, 994). Indeed, a broker " 'may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; *but all that gives him no claim*' " (*Donovan v Weed*, 182 NY 43, 47 [emphasis supplied], quoting *Sibbald v Bethlehem Iron Co., supra*, at 383).

It is true, as the majority emphasizes, that the circumstances of the sale suggest that the buyer, who was herself a real estate broker, may have deliberately attempted to mislead the broker into believing that she lacked any interest in the Cimino property. However, it must be remembered that the broker's contract was with the seller and not the buyer. Therefore, in light of the fact that the broker did not even identify the buyer to the seller, it cannot be readily concluded that the seller engaged in conduct calculated to deprive the broker of his commission (*cf., Smith & De Groat v Vita*, 178 AD2d 591). Nor is such a conclusion dictated by the mere fact that the contract of sale contained a clause providing that the purchaser indemnify the seller in the event that the broker claimed a commission.

Moreover, as recently as 1994 we refused to sustain a claim for a broker's commission where the factual situation was not unlike the one herein (*see, Lanstar Intl. Realty v New York News*, 206 AD2d 411). In the *Lanstar* case the broker showed the property once to the ultimate buyer and even attempted to set up a meeting between the buyer and seller. However, the buyer told the broker that it was not interested in the property, and after that point the broker had no further communications with either the seller or the buyer. The property was purchased by this buyer some 18 months after the broker first showed the property to it. The Supreme Court granted summary judgment dismissing the broker's complaint which sought a commission on the sale. This Court affirmed and stated as follows: "Viewing the evidence in the light most favorable to [the broker], the totality of its efforts consisted of little more

than bringing the * * * property to the attention of the [buyer] * * * There was no evidence in the record that [the broker] initiated any negotiations or discussed with the parties any of the basic material details upon which they would have to agree before executing a contract of sale * * * Under these circumstances, there is insufficient proof * * * that [the broker] was the procuring cause of the sale, an essential component of an action to recover a broker's commission" (*Lanstar Intl. Realty v New York News, supra,* at 412). Except for the fact that the sale at bar occurred much more quickly than the sale in *Lanstar* after the respective buyers first viewed the properties, there is little to distinguish the two cases so as to justify the plaintiff's recovery of a commission in this case (*see also, Douglas, Payton & Co. v We're Assocs.,* 197 AD2d 559 [commission denied where broker's efforts consisted of little more than bringing premises to attention of ultimate tenant, and no evidence that broker initiated any negotiations or discussed with parties any of basic material details of lease]).

In concluding that the broker herein is entitled to a commission, the majority establishes a precedent unwarranted by prior case law, to wit, recovery where the facts demonstrate little more than merely showing a property to a potential purchaser who ultimately does purchase the property. This is simply not the law in this State, and to hold otherwise may open the floodgates to a "veritable morass of [unfounded] claims" (*Greene v Hellman,* 51 NY2d 197, 206, *supra).*

Accordingly, I vote to affirm the judgment of the Supreme Court.